2017R00153

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 18-505 (RBK) |
| v. | : | HON. ROBERT KUGLER |
| KENNETH CRAWFORD JR. | : | <u>EX PARTE AND UNDER SEAL</u> |

**MOTION TO REVOKE KENNETH CRAWFORD JR.'S
CONDITIONS OF RELEASE AND FOR A BENCH WARRANT**

The United States moves to revoke defendant Kenneth Crawford Jr.'s conditions of release and for issuance of a bench warrant for his arrest. While released on bond pending trial in this case, Crawford has violated his conditions of release by committing a federal felony. Specifically, in violation of 18 U.S.C. § 1521, Crawford has filed false liens against government officials in retaliation for their prosecuting him. Moreover, Crawford has repeatedly failed to report to pre-trial services as directed and required as a condition of his release. As explained in more detail below, because Crawford has violated his conditions of release, and no condition or set of conditions of release will assure Crawford will not pose a danger to the community and because he is unlikely to comply with any conditions of release, the Court should revoke his conditions of release and detain him pending trial.

**BACKGROUND**

On August 29, 2018, a grand jury sitting in Camden, New Jersey, returned an indictment charging Kenneth Crawford, Jr. with one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371, eight counts of filing false claims with an agency of the United States, in violation of 18 U.S.C. §§ 287 and 2, and one count of obstructing the due

1

administration of the internal revenue laws, in violation of 26 U.S.C. § 7212(a).

The indictment alleges that the defendant marketed a tax fraud scheme referred to as the "Mortgage Recovery Program." Under the scheme, the defendant aided and assisted others in filing false documents with the IRS, including false individual income tax returns, to obtain tax refunds to which they were not entitled. The false documents filed with the IRS as part of the scheme falsely reported that taxpayers had received large amounts of income from their mortgage lenders and that substantial taxes were withheld from that income and paid to the IRS. In truth, the lenders had not paid Crawford's clients any income or made any payments to the IRS. The false tax returns requested refunds of the purported tax withholdings. According to the indictment, Crawford caused clients to submit approximately $2,334,938 in fraudulent refund claims to the IRS. The IRS issued approximately $1,393,511 to Crawford's clients as a result of these false and fraudulent claims. When the IRS paid the claimed refunds, Crawford received twenty-five percent of each refund from clients whom he convinced to participate in the "mortgage recovery program."

Once the IRS detected the scheme and initiated proceedings to collect the erroneously-issued refunds from Crawford's clients and assess financial penalties, Crawford allegedly attempted to obstruct the IRS's efforts by telling his clients to lie to the IRS, to conceal his involvement in assisting them with their tax returns, and, in some instances, to move the funds they had received out of their bank accounts to prevent the IRS from recovering the erroneously-issued refunds through bank levies.

On August 31, 2018, Crawford made his initial appearance. He was released upon conditions, including that he "must not violate any federal, state or local law while on release."

(Doc. No. 8.) Additionally, he was required to "report to the U.S. Pretrial Service office as directed." (*Id.*)

On February 7, 2019, while released upon conditions pending trial, Crawford filed a "Notice of Counter Claim and Demand." (Doc. No. 35.) In this pleading, Crawford advised that he had "recorded several financing statements, related to security interests, in the county clerks [sic] office" in Atlantic County, New Jersey. (*Id.* at 1.) Crawford attached copies of four UCC Financing Statements that he had recorded with the County Clerk for Atlantic County, New Jersey. (*Id.* at 5 – 6, 24 – 28) According to the financing statements, Crawford is a creditor who is owed over $1.4 million by the "debtor" prosecutors and special agent who are responsible for investigating and prosecuting Crawford's pending criminal case. Based on the supposed "debts" owed by the prosecution team, Crawford claims a "[p]riority security interest in all property and collateral belonging to the debtors." He values each of the "debtor's" supposed collateral at $1,468,800.

Obviously, no member of the prosecution team has entered any agreement—a security agreement or otherwise—with the defendant. Indeed, apart from their professional responsibilities investigating and prosecuting this case, no member of the prosecution team has ever had any interaction with Crawford and is not indebted to him in any way. The liens are false and fraudulent.

**ARGUMENT**

Defendants who violate any condition of their release under 18 U.S.C. § 3142(c) are subject to: (1) revocation of release, (2) an order of detention; and (3) a prosecution for contempt of court. 18 U.S.C. § 3148(a). Upon a motion for revocation by the Government, the Court

3

may issue an arrest warrant, and subsequently convene a hearing to determine whether there has been a violation. *Id.*

Pursuant to section 3148(b), the Court shall enter an order of revocation and detention if, after a hearing, the judicial officer finds that there is (1) probable cause to believe the person has committed a Federal, State or local crime while on release or clear and convincing evidence that the person has violated any other condition; and (2) based on the factors set forth in section 3142(g), there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community, or the person is unlikely to abide by any condition or combination of conditions of release. 18 U.S.C. § 3148(b); e.g., *United States v. Lacerda*, No. CRIM. 12-303 NLH/AMD, 2013 WL 4483576, at *9 (D.N.J. Aug. 19, 2013) (Hillman, J.)

Thus, section 3148(b) prescribes two separate standards depending upon the condition violated: a lower probable cause standard if the violation is a crime, and a clear and convincing standard for proving a violation of any other condition. Furthermore, if the condition violated is the prohibition against committing another crime, then "a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community." 18 U.S.C. § 3148(b).

Here, as explained below, probable cause exists to believe that Crawford has committed a federal crime while on release. Thus, it is presumed that no condition or combination of conditions will assure that he will not pose a danger to the safety of any person or the community. Additionally, clear and convincing evidence shows that Crawford has failed to report to pre-trial services as directed and required as a condition of his release. Crawford's

4

conduct while on release demonstrates that he is unlikely to abide by any condition or combination of conditions of release. Accordingly, Crawford's conditions of release should be revoked, and he should be arrested and detained pending trial.

### A. Probable cause exists to believe that Crawford violated 18 U.S.C. § 1521 while released on conditions pending trial.

Title 18, Section 1521, provides that:

> [w]hoever files, attempts to file, or conspires to file, in any public record or in any private record which is generally available to the public, any false lien or encumbrance against the real or personal property of an individual described in section 1114, on account of the performance of official duties by that individual, knowing or having reason to know that such lien or encumbrance is false or contains any materially false, fictitious, or fraudulent statement or representation, shall be fined under this title or imprisoned for not more than 10 years, or both.

In order to establish a violation of Section 1521, the government must prove the following beyond a reasonable doubt:

(1) that the defendant filed, attempted to file, or conspired to file, in a public record a false lien or encumbrance against the real or personal property of an individual;

(2) that such individual was an officer or employee of the United States or of any agency in any branch of the United States government;

(3) that the defendant filed the lien or encumbrance on account of the performance of such individual's official duties; and

(4) that the defendant knew or had reason to know that such lien or encumbrance was false or contained any materially false, fictitious, or fraudulent statement or representation.

*See United States v. Williamson*, 746 F.3d 987, 994 (10th Cir. 2014) (affirming conviction under 18 U.S.C. § 1521). Crawford's filing of UCC Financing Statements against members of the prosecution team amply supports a finding of probable cause on

each of these elements.

### i. Crawford filed a false lien or encumbrance in a public record to encumber real or personal property belonging to an individual.

In a filing with this Court, Crawford admits that he has "recorded several financing statements, related to security interests, in the county clerks [sic] office . . . authenticating the private record agreements between" himself and the prosecutors, the case agent, and the United States. (Doc. No. 35 at 1). He also attaches copies of "UCC Financing Statements" bearing the filing stamp of the County Clerk for Atlantic County. On their face, the documents claim that Crawford is a "Secured Party" and members of the prosecution team are "Debtors." (*Id*. at 25 and 28.) The documents purport to give notice that Crawford has a "[p]riority security interest in all property and collateral belonging to the Debtors"—the prosecutors and the case agent—"as agreed upon" and secured by collateral purportedly valued at $1,468,800.

Based on the foregoing, the face of the documents themselves establish probable cause for almost every aspect of this element of the crime. The only question is whether or not the liens are also false. They unquestionably are. None of the supposed debtors has borrowed money from Crawford, secured financing from Crawford, or entered any kind of financial agreement with Crawford. Indeed, were any member of the prosecution team actually indebted to Crawford—especially for nearly $1.5 million—professional and ethical rules would prohibit them from working on this case. Crawford concocted these purported debts and they have no basis in reality. They are false and fraudulent.

The fact that the liens are false and, therefore, invalid and likely unenforceable is

no defense to the crime. Even if these liens are unenforceable, it is well settled that a putative lien need not meet all the technical or legal requirements for enforceability in order to violate 18 U.S.C. § 1521. As one appellate court has explained:

> [t]he prohibition in 18 U.S.C. § 1521 is triggered by the filing of a false or fictitious lien, whether or not it effectively impairs the government official's property rights or interests. Indeed, legal insufficiency is in the nature of the false, fictitious, and fraudulent liens [] that Congress intended to proscribe.

*United States v. Reed*, 668 F.3d 978, 984-985 (8th Cir. 2011); *see also United States v. Neal*, 776 F.3d 645, at 653-54 (9th Cir. 2015) (holding that the validity of a lien document is irrelevant to determining whether Section 1521 has been violated).

The bogus liens filed by Crawford, whether enforceable or not, meet the criteria for prosecution under 18 U.S.C. § 1521.

### ii. The liens were filed against officers or employees of the United States.

Section 1521 prohibits the filing of false liens against federal officials, who are defined in 18 U.S.C. § 1114, as:

> any officer or employee of the United States or of any agency in any branch of the United States Government . . . while such officer or employee is engaged in or on account of the performance of official duties, or any person assisting such an officer or employee, in the performance of such duties . . . .

*Id.* The filing must claim an interest in the property of a government official, not merely a government agency, to be within the reach of Section 1521. *Reed*, 668 F.3d at 983. The liens in this case were filed to encumber "all property and collateral belonging to the Debtors." The "debtors," in turn, are an Assistant Chief and Trial Attorney with the United States Department of Justice, Tax Division, and a Special Agent with the IRS, Criminal Investigations Division. Clearly, the liens are intended to encumber property

7

belonging to individual government employees.[1]

There can be no doubt that Crawford filed these liens on account of these government employees' performance of their official duties: investigating and prosecuting federal tax crimes. The relationship of the prosecution team to Crawford, coupled with the timing of the liens, clearly evinces their retaliatory nature. Indeed, apart from performing their professional duties, no member of the prosecution team has had any dealings with Crawford. Not surprisingly, the liens were filed following Crawford's indictment. Absent this prosecution, it is unlikely that Crawford would even know of the supposed debtors identified in his putative liens.

The foregoing, standing alone, suffices to prove that Crawford filed the putative liens against government officials in retaliation for their performing their jobs. Even so, Crawford has provided additional evidence of this fact. In his filing with the Court, Crawford included "invoices" that supposedly support the alleged debts he claims he is owed by members of the prosecution team. These include debts related to (1) Crawford's arrest ("Impairment of liberty"), (2) his compliance with conditions of release, including relinquishing his passport and his firearm and submitting to DNA collection, and (3) attending "Court hearing(s) regarding Docket #1-18-cr-00505-001 (RBK)." (Doc. No. 35 at 21 – 23.) Obviously, the prosecution team is not indebted to Crawford for any amount, let alone nearly $1.5 million, for prosecuting this case.

---

1 Crawford has also filed a putative lien identifying the debtor as the "UNITED STATES OF AMERICA in care of Ricard E. Zuckerman d/b/a Princ. Dep. Ass. A.G." (Doc. No. 35 at 6.) Richard Zuckerman is the Principal Deputy Attorney General of the Tax Division, and, therefore, a government official. The putative lien, however, appears to target the United States. Thus, although the putative lien is false and retaliatory, it may not fall within the ambit of 18 U.S.C. § 1521. *See Reed*, 668 F.3d at 983.

8

Regardless, Crawford's "invoices" clearly show that he intends his putative liens to compensate him for government employees subjecting him to the criminal justice system in accordance with their official duties: investigating and prosecuting violations of federal law.

### iii. Crawford knew or had reason to know that his liens were false, fictitious, or fraudulent.

To establish a violation of Section 1521, the government must prove only that the defendant knew or had reason to know the liens were false, fictitious, or fraudulent. The government does not have to prove that the defendant filed the false lien "willfully." Consequently, "a defendant can be guilty even if he honestly believed that he filed a proper lien so long as that belief was not a reasonable one." *United States v. Williamson*, 746 F.3d 987, 994 (10th Cir. 2014).

Under no circumstance could Crawford, or any reasonable person, believe that these liens are proper. Frankly, the liens are absurd on their face and defy any reasonable explanation. Aside from looking at the facial absurdity of the liens, the Court can rely on its own vast experience with criminal defendants to see that no reasonable person could believe the liens are legitimate. Defendants are routinely arrested, arraigned, and released on bond before this Court. Surely, it is the rare defendant who then bills the prosecutor and investigator millions of dollars and claims a security interest in their property because they had the audacity to do their jobs. The rarity of such conduct evinces its absurdity: no reasonable person in Crawford's position would believe such debts are real or that such liens are proper.

Additionally, under his present circumstances, Crawford cannot possibly believe

9

his liens are meritorious. The liens are of a piece with the common tax defier and "sovereign citizen" tactics that got Crawford indicted in the first place. Crawford was indicted for allegedly conspiring with others to promote a tax fraud scheme that entailed filing false claims for refunds. The refund claims, in turn, were based on a false claim that taxpayers' mortgage lenders had paid them income and withheld income tax in an amount equivalent to the taxpayers' debt to the bank. In essence, they attempted to "redeem" their mortgage from the IRS by making fraudulent claims for unsupported tax refunds. The scheme is pervasive among tax defiers and "sovereign citizens." *See, e.g., United States v. Johnston*, 620 F. App'x 839, 841 (11th Cir. 2015) (affirming conviction based on evidence of similar scheme), *United States v. Bickart*, 825 F.3d 832, 834 (7th Cir. 2016) (same); *United States v. McQuarry*, 816 F.3d 1054, 1055 (8th Cir. 2016) (same); *United States v. Pawelski*, 651 F. App'x 750 (10th Cir. 2016)(same). The filing of false tax liens is equally pervasive—and equally illegal—among tax defiers and "sovereign citizens." *United States v. Neal*, 776 F.3d 645, 658 (9th Cir. 2015) (affirming conviction of filing a retaliatory lien by a defendant who "clearly endorsed the 'sovereign' citizen ideology"); *United States v. Croteau*, 819 F.3d 1293, 1299 (11th Cir. 2016) (affirming conviction of a defendant who "became involved with a tax protester and sovereign citizen group" and participated in a "redemption" scheme similar to that alleged in Crawford's indictment and filed false liens.) Having been indicted for participating in one common, illegal, and debunked tax protester scheme, Crawford was on notice that engaging in another scheme taken from the same tax protester and "sovereign citizen" playbook was likewise illegal.

He did it anyway.[2]

### B. Clear and convincing evidence shows that Crawford has failed to report to Pretrial Services as directed.

One of Crawford's conditions of release is that he "report to U.S. Pretrial Services office as directed." (Doc. No. 8.) Crawford has repeatedly violated this condition of his release.

Undersigned counsel has spoken with Acheme Amali, the U.S. Pretrial Services Officer assigned to Crawford. According to Amali, Crawford has been directed to contact him every Wednesday by telephone. Crawford failed to comply with this request. Accordingly, on December 14, 2018, Amali e-mailed Crawford to remind him of his obligation to contact Pretrial Services by phone every Wednesday. (Exhibit A.) Crawford responded that he was not bound by the conditions of his release because he agreed to them "under threat, duress, and coercion when [he] was kidnapped and held for 13 hours." (*Id.*) (Crawford's reference to "kidnapping" apparently refers to his arrest pursuant to an arrest warrant.) Crawford added that he had "entered an affidavit into the court record which negated the so called terms of release." (*Id.*) Amali contacted Crawford by telephone following this e-mail exchange and advised him of the necessity to comply with his requirement to contact Pretrial Services on a weekly basis. Crawford agreed to do so going forward and contacted Pretrial Services as directed until January 16, 2019. Crawford has not contacted Pretrial Services since then.

Undersigned counsel has advised Pretrial Services of its filing of this sealed motion and understands that Pretrial Services will provide its own evidence of the foregoing facts regarding

---

2 All of Crawford's seemingly bizarre behavior, including his behavior before this Court, results from his adhering to common tax defier and "sovereign citizen" tactics. Such behavior is not a function of incompetence or sincerely held, but mistaken, beliefs. Rather, it is a function of Crawford choosing to adhere to a widely circulated tax defier script that he believes, or hopes, will benefit him despite its illegality and absurdity.

11

Crawford's failure to contact them as directed.

### C. No condition or combination of conditions will assure that Crawford will not pose a danger to the safety of any other person or the community.

Where, as here, the release condition violated is the prohibition against committing another crime, then "a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community." 18 U.S.C. § 3148(b). Because probable cause exists to show that Crawford has violated 18 U.S.C. § 1521 while released, the presumption arises here. Additionally, because Crawford is charged with committing financial crimes and committed a financial crime while on release, it is important to note that "a defendant's propensity to commit crime generally, even if the resulting harm would be not solely physical, may constitute a sufficient risk of danger to come within the contemplation of the [Bail Reform] Act." *United States v. Provenzano*, 605 F.2d 85, 95 (3d Cir. 1979). Crawford's insistence on engaging in standard tax-defier crimes, even while released, clearly demonstrates his unwillingness to refrain from such conduct, all to the financial detriment of those he targets and to the federal fisc, from which he has stolen through his scams.

### D. Crawford is not likely to comply with any condition or combination of conditions of release.

Crawford's course of conduct since being released demonstrates the futility of releasing him under any conditions. He simply will not follow any conditions of release. Crawford has made this clear through (1) his violation of Federal law while released on conditions, (2) his repeated failure to report to Pretrial Services, and (3) his erroneous assertion that he has "negated" the conditions of his release and that he has "privately settled" the criminal charges

12

against him. We address each in turn below.

First, the defendant's committing a federal crime while on release raises the prospect that he will continue to violate the law while released. The D.C. Circuit recently emphasized the heavy weight given to this factor in predicting the likelihood that a defendant's will comply with release conditions going forward:

> The conduct that loomed largest—in both the briefing on the revocation motion and in the District Court's findings—was the evidence suggesting Appellant had committed a crime while on release. The District Court found that if Appellant had committed a new crime even while ordered not to commit a new crime, it was likely to happen again.

*United States v. Manafort*, 897 F.3d 340, 348 (D.C. Cir. 2018) (affirming revocation of release conditions). The same reasoning persuades here.

Second, the defendant's repeated failure to contact Pretrial Services—a standard condition of release—suggests that Crawford will not abide by the most basic conditions of release. This is particularly true considering that Pretrial Services reminded Crawford of his need to comply with this condition and gave him a second chance at doing so. Crawford blew his second opportunity. There is no reason to give him another.

Finally, the defendant's defiant, "above-the-law" statements to the Court and Pretrial Services make clear that he does not respect any conditions imposed by the Court and will not abide by them. For example, when contacted by Pretrial Services about his failure to abide by one of his conditions of release, Crawford responded that he has "negated the so called terms of release." (Exhibit A.) Similarly, he has made statements in open Court to the effect that, despite his having been indicted and pleaded not guilty, there will not be any trial because he has somehow resolved the case through private contract. These are not the statements of a defendant who has any intention of complying with even the most basic conditions of release.

## CONCLUSION

For the foregoing reasons, the Court should issue a bench warrant for Crawford's arrest and revoke his conditions of release. He should be detained pending trial.

Respectfully submitted by:

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General
U.S. Department of Justice, Tax Division


/s/Sean M. Green
SEAN GREEN
Trial Attorney
JOHN KANE
Assistant Chief
U.S. Department of Justice
Tax Division, Northern Criminal Enforcement
(202) 307-2554
Sean.M.Green@usdoj.gov
John.N.Kane@usdoj.gov

Case 1:18-cr-00505-RBK   Document 43   Filed 02/28/19   Page 15 of 17 PageID: 310



Begin forwarded message:

> **From:** "Crawfordgroup" <Crawfordgroup@comcast.net>
> **Date:** December 14, 2018 at 12:02:18 PM EST
> **To:** Acheme_Amali@njpt.uscourts.gov

1

Cc: "John Barry" <Jwbarry8@aol.com>
Subject: Re: Pretrial Services Reporting

Greetings,

Thank you for your email. Apparently you are under the impression that the agreement that I made under threat, duress, and coercion when I was kidnapped and held for 13 hours is still effective. That agreement was offered under color of law and accepted under duress.

Immediately after my release I entered an affidavit into the court record which negated the so called terms of release. Moreover as the creditor of this case docket I have settled the accounting with the moving party and will have an authenticated record of the agreement in a week or so.

That being said I welcome you to respond to the court record or this email with an affidavit or statement verified under your oath of office that you have jurisdiction to require me to stand by the release agreement in light of the existing record agreement that all charges have been settled.

Be advised that my notary witness has been copied on this email. I request any further communication be sent to me at the following email address: Jwbarry@aol.com

Thank you.

Kenneth Paul Jr.


Sent from my Verizon, Samsung Galaxy smartphone

-------- Original message --------
From: Acheme_Amali@njpt.uscourts.gov
Date: 12/14/18 10:23 AM (GMT-05:00)
To: crawfordgroup@comcast.net
Subject: Pretrial Services Reporting

Good morning Mr. Crawford,
I am reaching out to remind you about reporting to Pretrial Services weekly by telephone. It appears you have not checked in since our last conversation in November 2018. Please endeavor to call **856-757-5107 every Wednesday** to check in & provide any update or changes & report any law enforcement contact. You can check in with whoever answers the phone & your call will be documented. I will follow this email up with a phone call as well just to make sure you received this message. Thanks and have a good weekend.


Acheme Amali
U.S Pretrial Services Officer
District of New Jersey-Camden Office
856.757.5107 [office]

2

856.757.5110
[fax]

3