2017R00153

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 18-505 (RBK) |
| v. | : | HON. ROBERT KUGLER |
| KENNETH CRAWFORD JR. | : | |

**UNITED STATES' OMNIBUS MOTION IN LIMINE**

Kenneth Crawford Jr. has been charged with conspiring to defraud the United States, filing false claims with the Internal Revenue Service, and obstructing the due administration of the internal revenue laws. All charges relate to Crawford's promotion, with co-conspirators, of a tax fraud scheme referred to as the "Mortgage Recovery Program." Under the scheme, with the assistance of co-conspirators, Crawford caused false documents, including false tax returns, to be prepared and filed with the IRS on behalf of clients who paid Crawford to help them keep their homes after they had fallen behind on their mortgages. Through the false filings, and based on Crawford's advice, Crawford's clients claimed—and sometimes received—tax refunds from the IRS. The refunds were based on false claims that banks holding mortgages for Crawford's clients had withheld hundreds of thousands of dollars in tax from income they supposedly paid them. In truth, the banks paid no income to Crawford's clients and paid no tax to the IRS.

Trial is scheduled to commence on May 6, 2019. Prior to trial, the United States moves in limine for the Court to admit certain evidence as intrinsic to the charged crimes, or, alternatively, under Federal Rule of Evidence 404(b), and to limit the admission of tax protester materials the defendant may offer at trial. Specifically, for the reasons stated below, the Court should: (1) admit evidence of uncharged conduct Crawford engaged in on behalf of clients who

participated in the "Mortgage Recovery Program," (2) admit evidence that Crawford failed to file tax returns reporting income he earned promoting the "Mortgage Recovery Program," (3) limit the admission of tax defier material and not allow it to be offered for the truth of the matter asserted, and (4) preclude the defendant from arguing his disagreements with the law or presenting his views on the law as evidence.

## BACKGROUND

On August 29, 2018, a grand jury sitting in Camden, New Jersey, returned an indictment charging Kenneth Crawford, Jr. with one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371, eight counts of filing false claims with an agency of the United States, in violation of 18 U.S.C. §§ 287 and 2, and one count of obstructing the due administration of the internal revenue laws, in violation of 26 U.S.C. § 7212(a).

The indictment alleges that the defendant marketed a tax fraud scheme referred to as the "Mortgage Recovery Program."  Under the scheme, the defendant aided and assisted others in filing false documents with the IRS, including false individual income tax returns, to obtain tax refunds to which they were not entitled.  The false documents filed with the IRS as part of the scheme falsely reported that taxpayers had received large amounts of income from their mortgage lenders and that substantial taxes were withheld from that income and paid to the IRS. In truth, the lenders had not paid Crawford's clients any income or made any payments to the IRS.  The false tax returns requested refunds of the purported tax withholdings.  According to the indictment, Crawford caused clients to submit approximately $2,334,938 in fraudulent refund claims to the IRS.  The IRS issued approximately $1,393,511 to Crawford's clients as a result of these false and fraudulent claims.

When the IRS paid the claimed refunds, Crawford received twenty-five percent of each

refund from clients whom he convinced to participate in the "Mortgage Recovery Program." Although Crawford received over $300,000 in income from his clients between 2015 and 2016, he did not file a tax return for either year.

Once the IRS detected the scheme and initiated proceedings to collect the erroneously-issued refunds from Crawford's clients and assess financial penalties, Crawford attempted to obstruct the IRS's efforts by telling his clients to lie to the IRS, to conceal his involvement in assisting them with their tax returns, and, in some instances, to move the funds they had received out of their bank accounts to prevent the IRS from recovering the erroneously-issued refunds through bank levies. In one instance, when the IRS reached out to one of Crawford's clients about his receipt of an erroneous tax refund based on the fraudulent tax return he filed with Crawford's assistance, Crawford texted the client: "They are just trying to scare you and find out if someone helped you. If you say someone helped you they will want the money back Yiu [sic] have to say that you researched the Internet." Similarly, in an audio file that Crawford e-mailed to two other clients, Crawford says that "the worst thing you can do is say . . . somebody helped me" file the tax return. In truth, all of Crawford's clients filed their tax returns based on advice provided by Crawford. Moreover, every return was prepared by one of Crawford's co-conspirators. Nevertheless, to conceal Crawford's and his co-conspirator's involvement, none of the tax returns identified the tax return preparer. Instead, all falsely stated that the returns were "Self Prepared" by the client.

Clients who participated in the "Mortgage Recovery Program" were generally behind on their mortgages and were facing foreclosure. For most, the "Mortgage Recovery Program" was just the latest in a series of schemes Crawford pitched to them as a means of saving their homes. Indeed, many of these clients had already entered into a "Contract for Services" with Crawford

"to effect the removal and/or reduction of mortgage liens on [their] property."   (Exhibit A).  Crawford initially attempted to eliminate these clients' mortgages through the creation and filing of false and fraudulent documents, including so-called "Private Registered Setoff Bonds."  (Exhibit B).   When this initial effort inevitably failed and banks began foreclosure proceedings against Crawford's clients, Crawford ghost wrote correspondence and even pleadings for his clients to send to their lenders and file in foreclosure proceedings.   As with the "Private Registered Setoff Bonds," the correspondence and pleadings Crawford provided his clients—again, for a fee—were frivolous and ineffective.   (*See, e.g.,* Exhibit C.)

When Crawford's original tactics failed to save his clients' homes, he pitched them the "Mortgage Recovery Program," through which he claimed they could receive a tax refund from the IRS based on their mortgage.   Clients could then use the tax refund—or, what remained of the tax refund after paying Crawford's fee—to pay off their mortgages.   In correspondence with his clients, Crawford made clear that the "Mortgage Recovery Program" was just a continuation of his efforts to save his clients' homes.   For example, in February of 2015, after Crawford had failed to help a client with his fictitious "Private Registered Setoff Bonds" and frivolous pleadings in the client's foreclosure case, he emailed the client to say: "Wanted to share with you another remedy I have personally done which is a tax refund for your mortgage . . . Contact me asap."   (Exhibit D).   Similarly, in June of 2015, after stringing along another client with "Private Registered Setoff Bonds" and then drafting frivolous pleadings for the client to file in her foreclosure proceedings, Crawford wrote:

> I know we covered this but I wanted to make sure we are on the same page. For services rendered for the IRS recoupment (refund) you agreed to pay my 15% and the affiliate 10k flat fee.   Just don't want any issues when the check comes. Also, I have another idea for you to get the house only using the money you get from refund.   This is in case the court drew [sic] you over.   Good to have back ups."   (Exhibit E).

As these emails and Crawford's course of conduct with his clients prove, the "Mortgage Recovery Program" was just the latest in a long-running effort by Crawford to profit from those willing to pay him for services that could purportedly save their homes.

All of Crawford's conduct—whether the filing of "Private Registered Setoff Bonds" or the promotion of the "Mortgage Recovery Program"—adhered to common and debunked tactics employed by tax defiers.   In appearances before this Court, Crawford has espoused tax defier arguments based on frivolous legal positions, including, among others, that the Court lacks jurisdiction because he does not reside on Federal land, that he has "privately settled" his dispute with the United States through contracts with government officials, and that he is not the defendant because there is a legal distinction between "KENNETH CRAWFORD JR.," as charged in the indictment, and "Kenneth Crawford Jr."   He has attempted to justify these positions with distorted and incomprehensible arguments about the Uniform Commercial Code, contract law, and the Constitution.   The defendant's "legal" arguments, like his conduct, are common among tax defiers and, if presented to the jury, would confuse the jury and invade the province of the Court to instruct the jury on the governing law.

## ARGUMENT

I. **The Court should admit evidence of Crawford's efforts to eliminate his clients' mortgages and prevent foreclosure prior to or concurrent with the charged conduct.   This evidence is intrinsic to the crimes charged or, alternatively, admissible under Federal Rule of Evidence 404(b).**

As discussed above, prior to or concurrent with aiding and assisting clients in filing false tax returns to obtain illegitimate tax refunds based on their mortgages, Crawford promoted related schemes to the same clients to eliminate their mortgages and prevent foreclosure on their

homes. This included providing clients with false and fraudulent documents, including supposed "Private Registered Setoff Bonds," and frivolous documents to file in foreclosure proceedings. All of this was part of a continuing course of conduct promoted by the same defendant, to the same clients, with the same ostensible goal: preventing Crawford's clients from losing their homes. As such, evidence of this uncharged conduct should be admitted as intrinsic to the charged offenses, or, alternatively, under Federal Rule of Evidence 404(b).

The admission of uncharged crimes, wrongs, or other acts is generally governed by Federal Rule of Evidence 404(b). But the rule is inapplicable when "evidence of uncharged offenses committed by a defendant ... are intrinsic to the proof of the charged offense." *U.S. v. Gibbs*, 190 F.3d 188, 217 (3d Cir.1999); *United States v. Johnson*, 262 F.R.D. 410, 415 (D. Del. 2009) see also Fed.R.Evid. 404(b) Advisory Committee's Note. Under Third Circuit law, evidence is intrinsic if it either (1) "directly proves" the charged offense or (2) it "facilitates the commission of the charged crime." *United States v. Green*, 617 F.3d 233, 247 (3d Cir. 2010) (internal citations omitted.)[1]

If evidence of uncharged conduct is not "intrinsic" to the charged offense, it may still be admitted under Rule 404(b). Under that rule, while prior bad acts evidence is inadmissible to prove that the defendant "acted in conformity therewith," it "may ... be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed.R. Evid. 404(b).

---

1 Other circuits deem evidence "intrinsic" if it is "inextricably intertwined" with the charged crime or "complete[s] the story of the crime on trial." *See, e.g., United States v. Carboni*, 204 F.3d 39, 44 (2d Cir.2000); *United States v. Inserra*, 34 F.3d 83, 89 (2d Cir. 1994). The Third Circuit has rejected this interpretation of "intrinsic" evidence, but noted that its more narrow interpretation should not have much practical effect on what is or is not admitted. *United States v. Green*, 617 F.3d 233, 248–49 (3d Cir. 2010) ("As a practical matter, it is unlikely that our holding will exclude much, if any, evidence that is currently admissible as background or "completes the story" evidence under the inextricably intertwined test. . . [M]ost, if not all, other crimes evidence currently admitted outside the framework of Rule 404(b) as "background" evidence will remain admissible under the approach we adopt today.")

Rule 404(b) is a rule of inclusion rather than of exclusion. *United States v. Jemal*, 26 F.3d 1267, 1272 (3d Cir. 1994) (citing *United States v. Scarfo*, 850 F.2d 1015, 1019 (3d Cir.), cert. denied, 488 U.S. 910 (1988). Evidence can be admitted even if it does not fit one of the specific exceptions listed in the rule, so long as it is used for a purpose other than proving a defendant's likelihood to have committed this particular crime based on an inference drawn from evidence pertaining to his character. *Id*. Indeed, the Court "favor(s) the admission of Rule 404(b) evidence when it is relevant for any other purpose than to show the defendant's propensity to commit the charged offense. *United States v. Daraio*, 445 F.3d 253, 263 (3d Cir. 2006).

In this case, evidence of illegitimate conduct Crawford engaged in to eliminate his clients' mortgages for a fee prior to or concurrent with introducing those clients to the "Mortgage Recovery Program" is intrinsic evidence of the charged crimes. The conduct "facilitated" the charged crimes because it established a continuous financial relationship between Crawford and his clients that ultimately led to their filing false tax returns in an effort to rid themselves of their mortgages. The conduct also provides circumstantial evidence of an essential element of the charged crimes: willfulness.[2] The fact that the false tax returns Crawford caused others to file was just "another remedy" or a "back up" plan to longstanding—but ineffective and illegitimate—efforts to eliminate his clients' mortgage is probative of Crawford's intent. It shows that his goal was not to provide legitimate tax advice based on a good faith interpretation of the tax laws, but that it was just another effort to collect fees from desperate clients who paid him to prevent losing their homes.

---

2 Crawford has been charged with, among other things, causing others to file false claims with the IRS. See 18 U.S.C. § 287, 2. The term "willfully" is not used in Section 287 and is not an essential element of § 287. *United States v. Irwin*, 654 F.2d 671, 682 (10th Cir. 1981). Nevertheless, "in a prosecution under § 2(b), the government must show the following mens rea elements: (1) that the defendant had the mens rea required by the underlying statute; and (2) that the defendant willfully caused the innocent intermediary to commit the act prohibited by the underlying statute." *United States v. Gumbs*, 283 F.3d 128, 132 (3d Cir. 2002). Thus, the United States must prove that Crawford willfully caused his clients to file false tax returns.

Even if Crawford's efforts to eliminate his clients' mortgages through "Private Registered Set-Off Bonds" and frivolous legal pleadings were not intrinsic to the charged crimes, it is still admissible under 404(b).   The evidence is not offered to show that Crawford had a propensity for criminal activity.   Rather, it provides essential background regarding his relationship with the clients he caused to file false tax returns, and "allowing the jury to understand the circumstances surrounding the charged crime—completing the story—is a proper, non-propensity purpose under Rule 404(b)." *Green*, 617 F.3d 233 at 247.   It is also admissible under 404(b) because it shows motive, plan, and intent.   Specifically, it proves that Crawford's overarching motive, plan, and intent was to profit from desperate people by promising them that he could eliminate their mortgages.   The "Mortgage Recovery Program" was just the latest in that effort.

The foregoing amply demonstrates the relevance and probative value of the proffered evidence.   It also meets all other criteria necessary for admission under 404(b).   In accordance with the rule, the United States has provided notice of its intent to offer this evidence under 404(b).   (Doc. No. 62).   Additionally, whatever minimal prejudice this evidence may cause, it cannot possibly substantially outweigh its probative value.   *See* Fed. R. Evid. 403.   Here, the uncharged conduct and charged conduct both involved fraudulent efforts to eliminate mortgages, but only the charged conduct involved filing false documents with the IRS.   Thus, the jury is unlikely to find the uncharged conduct more fraudulent or criminal than the charged conduct and is unlikely to infer from it a propensity to have committed the charged offenses.

**II.     The Court should admit evidence of Crawford's personal tax filing history, including evidence that he failed to file tax returns reporting income he received from clients who participated in the "mortgage recovery program." This evidence is intrinsic to the crimes charged or, alternatively, admissible under Federal Rule of Evidence 404(b).**

Clients who participated in the "Mortgage Recovery Program" paid Crawford handsomely for his work. Generally, if the IRS was tricked into issuing a tax refund based on a false tax return, the clients paid Crawford twenty-five percent of the refund. Bank records and witness testimony will show that Crawford received $255,244 in 2015 and $47,055 in 2016 from clients who participated in the "Mortgage Recovery Program." Despite receiving this income, Crawford did not file a tax return in 2015 or 2016. Although Crawford has not been charged with failure to file these tax returns, his failure to do so is intrinsic to the crimes charged or, alternatively, admissible under Rule 404(b).

Crawford's failure to report income from his criminal conduct is intrinsic evidence of the crimes charged. Crawford's failure to report income from his illegal scheme helped him conceal the scheme, and therefore, "facilitate" it. *See Green*, 617 F.3d 233, 247 (evidence is intrinsic if it "facilitates commission of the charged crime.") Crawford went to great lengths to conceal his involvement in aiding and assisting others in filing false tax returns and other false documents. This included (1) having clients file false tax returns that were purportedly "Self Prepared," even though Crawford's co-conspirator prepared the returns at Crawford's request, and (2) directing clients to lie to the IRS by saying no one helped them with their tax returns, even though the clients relied exclusively on Crawford and his co-conspirators to file their false tax returns. Clearly, Crawford wanted to conceal his involvement in the scheme. Doing so would prevent his getting caught and allow him to continue promoting the scheme. Thus, Crawford's failure to file tax returns reporting his illegal income, along with his other concealing conduct,

"facilitated" his commission of the charged crimes.

Alternatively, evidence of Crawford's failure to file his own tax returns for 2015 and 2016 is admissible under 404(b) to prove willfulness. In cases involving violations of federal tax laws such as tax evasion, courts routinely admit evidence of the defendant's uncharged tax filing record to prove willfulness circumstantially. *See, e.g, United States v. Daraio*, 445 F.3d 253, 264 (3d Cir. 2006) (collecting cases); *see also United States v. Johnson*, 893 F.2d 451, 453 (1st Cir. 1990) (holding evidence of defendant's failure to file tax return in subsequent year proper to show defendant's willful intent to avoid paying taxes in years immediately previous); *United States v. Ebner*, 782 F.2d 1120, 1127 n.7 (2d Cir. 1986) (The jury may consider evidence of intent to evade taxes in one year as evidence of intent to evade payment in prior or subsequent years.); *United States v. Ramantanin*, 452 F.2d 670, 672 (4th Cir. 1971) (holding evidence of defendant's failure to file tax return for prior years not charged in indictment proper to show defendant's intent and willfulness).

Here, Crawford's failure to report income from the tax fraud scheme he promoted is compelling evidence of Crawford's willfulness for two reasons. First, all of Crawford's efforts to conceal his causing others to file false tax returns—including his failure to report the income he illegally earned by doing so—circumstantially proves that Crawford knew his conduct was illegal. After all, those providing legitimate tax advice (or even those providing incorrect tax advice in good faith) do not hide their activity. Second, Crawford's failure to file his own tax returns demonstrates his attitude toward the tax laws at the time he engaged in the charged conduct and undercuts any argument that, in promoting the "Mortgage Recovery Program," he was attempting in good faith to help people receive benefits they were entitled to receive under the tax laws. Thus, evidence of Crawford's failure to file is probative of his state of mind, which

is a valid reason for presenting evidence under 404(b).

In accordance with Rule 404(b), the United States has provided notice of its intent to offer evidence of Crawford's failure to file tax returns. (Doc. No. 62). Finally, although there is admittedly some danger of prejudice in admitting evidence that Crawford did not file tax returns, the probative value of the evidence substantially outweighs any possible prejudice. *See* Fed. R. Evid. 403. While Crawford's failure to file a required tax return is a crime, it is a misdemeanor offense. See 26 U.S.C. § 7203. Crawford has been charged, on the other hand, with eleven felony charges under three different statutes. It is unlikely that evidence of a possible misdemeanor will cause a jury to conclude that Crawford has committed the felonies with which he was charged. Moreover, given the obvious and substantial probative value of Crawford's failure to file tax returns to his state of mind, which is likely to be the central issue in the case, any potential for prejudice is dwarfed by its probative value. Moreover, any potential prejudice can be addressed by a limiting instruction to the jury.

For the foregoing reasons, the Court should admit evidence of Crawford's failure to file tax returns for 2015 and 2016 under Rule 404(b).

### III. The Court should limit the admission of tax defier material and not allow it to be offered for the truth of the matter asserted.

One of the more significant evidentiary issues confronting the Court in this case is the admission and treatment of tax protester/tax defier materials. Because tax protester material generally, and some of the documents in this case specifically, encroaches upon the sole province of the Court by purporting to state what the law is – and, in doing so, raises the prospect of potential jury confusion – particular care must be given concerning the manner in which it is to be received into evidence, if it is to be received at all.

Fortunately, the appellate courts have addressed this precise point: how to treat the

admission of tax protester and legal material. In short, a defendant is certainly permitted to testify concerning his or her purported good faith reliance, but the admissibility of tax protester/tax defier material is extremely limited, and strongly-worded instructions from the Court are required.

In this case, the defendant—either directly or through others—sent or filed tax protester correspondence to the IRS, mortgage lenders, and courts. There are two conceivable purposes for which such materials may be offered into evidence. *See generally* Fed. R. Evid. 105 (same evidence may be admissible for one party for one purpose while precluded for another party and another purpose). First, a defendant may seek to offer correspondence sent to the IRS in his case-in-chief to show good faith reliance, in order to negate a finding of willfulness or knowing of the false, fictitious, and fraudulent nature of the documents he caused others to file with the IRS. Second, the United States may seek to admit the substance of some of the tax defier literature and correspondence to show defendant's efforts to obstruct, impede, and delay IRS enforcement actions against him and his clients. It may also offer the material to show the facial absurdity of the defendant's purported beliefs, which the jury may consider in determining whether he actually knew that the scheme he promoted was false, fictitious and fraudulent. *See United States v. Basile*, 570 F. App'x 252, 256 (3d Cir. 2014) (approving instruction that jury "may consider whether the Defendant's stated belief about the tax statutes was reasonable as a factor in deciding whether the belief was honestly or genuinely held"). In neither case will either party be offering the tax defier materials for the truth of the matter of asserted; rather, they will be offered only to show defendant's state of mind.

To the extent defendant seeks to admit this material to show good faith reliance, circuit law holds that the trial court may not admit tax protester or other legal material until defendant

takes the stand and lays the proper foundation by testifying that he or she viewed and relied upon the material being offered.  *United States v. Powell*, 955 F.2d 1206, 1213-14 (9th Cir. 1992) (legal materials may be excluded where defendant does not lay foundation by asserting claim that these are materials upon which he relied); *United States v. Willie*, 941 F.2d 1384, 1391-99 (10th Cir. 1991) (defendant must lay proper foundation establishing reliance before admission of tax protester or other legal materials).

In fact, even when a defendant does testify, many courts impose strict limitations concerning the admissibility of tax protester material in order to avoid cumulative evidence, and potential jury confusion, consistent with Fed. R. Evid. 403.  Even when a defendant claims good faith reliance upon tax protester and other legal materials in expressing his purported "good faith" beliefs, courts still exclude the documentary material, and will only permit a defendant's quotation from the documents.  *United States v. Hairston*, 819 F.2d 971, 973-74 (10th Cir. 1987) (excluding documents, but permitting defendant to quote from them while on the stand); *United States v. Simkanin*, 420 F.3d 397, 412-413 (5th Cir. 2005) (permitting defendant's testimony, but excluding documents); *United States v. Flitcraft*, 803 F.2d 184, 186 (5th Cir. 1986) (excluding legal tax documents as cumulative to defendant's testimony, and confusing to the jury); United States v. Barnett, 945 F.2d 1296, 1301 (5th Cir. 1991); *United States v. Latham*, 754 F.2d 747, 751 (7th Cir. 1985) (excluding legal writings purportedly relied upon other than direct quotations read by the defendant while testifying); *United States v. Nash*, 175 F.3d 429, 435-436 (6th Cir. 1999) (excluding some tax protester material, and only permitting defendant to quote from portions while on the stand); *United States v. Mann*, 884 F.2d 532, 538-39 (10th Cir. 1989) (excluding writings themselves, but permitting defendant to testify about his beliefs based on the writings); *United States v. Gaumer*, 972 F.2d 723, 725 (6th Cir. 1993) (trial court

permitted to keep out actual legal tax documents, but permit quotation by defendant while testifying); *United States v. House*, 617 F. Supp. 232, 236 (W.D. Mich. 1985) (excluding tax protester/legal materials, but recognizing that defendant may claim reliance on such materials).

The Second Circuit affirmed a district court's decision to keep out legal opinions in a tax case altogether even when the defendant stated that he relied on such opinions in good faith as part of his defense. *United States v. Kraeger*, 711 F.2d 6 (2d Cir. 1983). As the court held: "Evidence such as this is likely to confuse a jury on the distinction between questions of law, which are for the court to decide, and questions of fact, which are for the jury." *Id*.

In this case, based on the authority above, the Court should preclude offering any tax defier materials for their truth and limit their admission only to the extent offered, upon a proper foundation, to prove the defendant's state of mind.

### IV. The defendant should be precluded from arguing his disagreements with the law or presenting his views on the law as evidence.

It is well established that, "[i]n our judicial system the court instructs the jury on the applicable law, and directs the jury to determine the facts from the evidence and to apply the law as given by the court to those facts." *United States v. Garber*, 589 F.2d 843, 849 (5th Cir. 1979). Moreover, "it is within the sole province of the court 'to determine the applicable law and to instruct the jury as to that law.'" *United States v. Hill*, 167 F.3d 1055, 1069 (6th Cir. 1999) (quotation omitted); *see also United States v. Willie*, 941 F.2d 1384, 1396 (10th Cir. 1991) ("[T]he law is given to the jury by the court and not introduced as evidence. . . . Obviously, it would be most confusing to a jury to have legal material introduced as evidence and then argued as to what the law is or ought to be. . . . Juries only decide facts, to which they apply the law given to them by the judge." (quotations and internal citations omitted)).

Based on the history of defendant in this case, there is good reason to believe that he may

attempt to improperly present to the jury legal materials and argument along various tax-protestor or tax-defier themes. To ensure a fair trial, defendant's legal arguments, including those made during opening statement and closing arguments, must be limited to the facts presented during trial and the instructions given by this Court. Defendant is, of course, permitted to argue that he lacked the requisite intent to commit the crimes with which he is charged, including that he acted based on his good faith interpretation of the law. *See Cheek v. United States,* 498 U.S. 192, 202 (1991) (government required to rebut claim of good faith misunderstanding or ignorance of the law). A disagreement with the law, however, is not a defense to any of the crimes alleged in the Indictment since one must have knowledge of the law in order to disagree with it. Thus, defendant must not be permitted to blur the line between factual evidence about his state of mind and the actual law. *See* Fed. R. Evid. 103(c).

Moreover, if a defendant interjects into the proceedings his or her disagreements with the law, the Supreme Court in *Cheek* indicated that it would be proper for the Court to issue an instruction to disregard them. *See Cheek*, 498 U.S. at 206. A reading of the language of *Cheek* supports the following instruction:

> A person's opinion or belief that the tax laws are invalid or violate his constitutional rights is not a defense to the crime charged in this case. Mere disagreement with the law does not constitute a good faith misunderstanding of the requirements of the law, because it is the duty of all persons to obey the law whether or not they agree with it. Any evidence that you have heard to the contrary in this regard is irrelevant and should be ignored.

*See Cheek*, 498 U.S. at 202-206. If defendant has legal arguments regarding his interpretation of the Internal Revenue Code or other laws, he can present his argument to the Court in a trial brief or through proposed jury instructions. The Court can then determine the law and present it to the jury after all evidence has been presented.

Based on the foregoing, we ask the Court to preclude the defendant from presenting evidence or argument regarding any disagreement he has with the law.

## CONCLUSION

For the foregoing reasons, the Court should: (1) admit evidence of Crawford's uncharged conduct to eliminate mortgages and prevent foreclosure for clients who participated in the "Mortgage Recovery Program," (2) admit evidence of Crawford's failure to file tax returns in 2015 and 2016, (3) exclude tax protestor materials from evidence to the extent they are offered for their truth, and (4) preclude the defendant from presenting evidence or argument of his disagreement with the law.

Respectfully submitted by:

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General
U.S. Department of Justice, Tax Division


  /s/Sean M. Green
SEAN GREEN
Trial Attorney
JOHN KANE
Assistant Chief
U.S. Department of Justice
Tax Division, Northern Criminal Enforcement
(202) 307-2554
Sean.M.Green@usdoj.gov
John.N.Kane@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of April, I filed this notice via ECF and caused a copy to be mailed to:

Ken Crawford Jr.
Inmate 71800-050
FDC PHILADELPHIA
FEDERAL DETENTION CENTER
P.O. BOX 562
PHILADELPHIA, PA  19105

By: */s/ Sean M. Green*
SEAN M. GREEN
Trial Attorney
U.S. Department of Justice
Tax Division
601 D. Street, N.W.
Washington, D.C. 20530
202-307-2554 (v)
Sean.M.Green@usdoj.gov